UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANN ARBOR T-SHIRT COMPANY, LLC

        Plaintiff,

v.                                             Civil Case No. 15-cv-13647
                                              Honorable Linda V. Parker

LIFEGUARD LICENSING CORP. and
POPULARITY PRODUCTS, LLC,

        Defendants.
_____/

**<u>OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS</u>**

On October 16, 2015, Plaintiff Ann Arbor T-Shirt Company ("Ann Arbor T-Shirt") filed this declaratory judgment action against Defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. This lawsuit arises from Ann Arbor T-Shirt's use of "LIFEGUARD" on clothing apparel, which Defendant Lifeguard Licensing Corporation ("Lifeguard Corp.") has contended violates Lifeguard Corp.'s federal trademarks for the use of "LIFEGUARD." Lifeguard Corp. licenses its LIFEGUARD trademarks to other entities, such as Defendant Popularity Products, LLC ("Popularity"), which is the exclusive licensee of one or more of Lifeguard Corp.'s trademarks. In its Complaint, Ann Arbor T-Shirt seeks a declaration that: (I) LIFEGUARD is a generic mark and therefore cancellable; (II) Ann Arbor T-Shirt's use of LIFEGUARD is fair or descriptive such that Ann

Arbor T-Shirt is not violating the Lanham Act by using the mark, 15 U.S.C. § 1115(b)(4); and (III) the use of LIFEGUARD is a functional use which does not violate the Lanham Act, 15 U.S.C. § 1115(b)(8).

Presently before the Court is Defendants' motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b) on November 25, 2015. (ECF No. 8.) The motion has been fully briefed. (ECF Nos. 14, 19.) Finding the facts and legal arguments sufficiently developed in the parties' briefs, the Court is dispensing with oral argument with respect to Defendants' motion pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I. Defendants' Arguments for Dismissal

In the motion to dismiss, Lifeguard Corp. argues that the Court lacks personal jurisdiction over it because it has insufficient contacts with the State of Michigan. Popularity contends that Ann Arbor T-Shirt's Complaint fails to state a claim against it because Popularity is only a licensee and not an owner of the LIFEGUARD marks. In their reply brief, Defendants assert that Ann Arbor T-Shirt's action is an improper anticipatory declaratory judgment action and that this further serves as a basis to dismiss the Complaint.

"[I]t is well-settled that a party may not raise new issues for the first time in a reply brief." *Resolution Trust Corp. v. Townsend Assoc. Ltd. P'ship*, 840 F. Supp. 1127, 1142 n. 15 (E.D. Mich. 1993) (citing *United States v. Jerkins*, 871

F.2d 598 (6th Cir. 1989)); *see also United States v. Galaviz*, 645 F.3d 347, 362 (6th Cir. 2011) ("We do not usually entertain new arguments raised for the first time in a reply brief.") (citing *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir.2002)); 16AA Charles Alan Wright et al., Fed. Prac. & Proc. Juris. § 3974.3. Therefore, the Court will not consider the argument for dismissal raised by Defendants for the first time in their reply brief.

## II. Applicable Standards of Review

Lifeguard Corp.'s request for dismissal for lack of personal jurisdiction is brought pursuant to Federal Rule of Civil Procedure 12(b)(2). The plaintiff bears the burden of establishing the existence of personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). The district court may address a Rule 12(b)(2) motion on the parties' submissions or permit limited discovery and hold an evidentiary hearing. *Id*. When, as here, the court does not conduct an evidentiary hearing and relies only on written submissions and affidavits to resolve the motion, " 'the plaintiff need only make a prima facie showing of jurisdiction. In this situation, [the court] will not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and [it] will construe the facts in a light most favorable to the nonmoving party.' " *Indah v. SEC*, 661 F.3d 914, 920 (6th Cir. 2011) (quoting *Bird v. Parsons*, 289

3

...

F.3d 865, 871 (6th Cir. 2002)).  Additionally, in this situation, the burden on the plaintiff is "relatively slight."  *Air Prods. & Controls*, 503 F.3d at 549 (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)).

Popularity's request for dismissal for failure to state a claim upon which relief may be granted is brought pursuant to Federal Rule of Civil Procedure 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

### III. Background

Ann Arbor T-Shirt is a Michigan limited liability company with its principal place of business in Ann Arbor, Michigan. (ECF No. 1 ¶ 1.) Jerry Kozak and Richard Winowiecki own Ann Arbor T-Shirt. (ECF No. 16-4 ¶ 11.) Ann Arbor T-Shirt is in the business of manufacturing and selling t-shirts and other apparel. (ECF No. 1 ¶ 10.) Ann Arbor T-Shirt sells its merchandise online through Amazon.com, as well as through its own website. (*Id*. ¶¶ 11, 12.) Since at least September 2013, Ann Arbor T-Shirt has sold t-shirts with "Lifeguard" visibly printed on the front. (*Id*. ¶ 17.)

Lifeguard Corp. is a Delaware limited liability corporation with its sole office in New York City, New York. (*Id.* ¶ 2; *see also* ECF No. 10 ¶ 2.) Lifeguard Corp. owns federal trademark registrations for LIFEGUARD. (ECF No. 1 ¶ 24.) Lifeguard Corp. does not perform operational functions; instead, it licenses its LIFEGUARD marks to other companies which sell "LIFEGUARD" products. (*Id.* ¶¶ 25-26; ECF No. 10 ¶¶ 3-4.) None of Lifeguard Corp.'s licensees are located in Michigan and, to the recollection of its owner Reuben Azrak, it has never signed a contract with a company located or based in Michigan. (ECF. No. 10 ¶¶ 6.) Lifeguard also does not maintain property, employees, or assets in Michigan, and has never initiated litigation in Michigan. (*Id.* ¶¶ 7, 8.) Lifeguard Corp.'s sole employee works out of its New York City office. (*Id.* ¶ 5.)

Since 2008, Lifeguard Corp. has licensed LIFEGUARD trademarks to Popularity. (*Id.* ¶ 10.) Popularity is a Virginia limited liability corporation, headquartered in Brooklyn, New York. (ECF No. 11 ¶ 2; *see also* ECF No. 1 ¶ 4.) Pursuant to the License Agreement between Lifeguard Corp. and Popularity, Lifeguard Corp. remains the sole owner of all rights, title, and interest in the LIFEGUARD trademarks. (ECF No. 10, citing Ex. A ¶ 8.3.)

On September 25, 2012, counsel for Lifeguard Corp., Gerry Grunsfeld of the Brooklyn, New York law firm of Lazar Grunsfeld Elnadav LLP, sent a letter via regular and electronic mail to Ann Arbor T-Shirt, charging Ann Arbor T-Shirt with

infringing Lifeguard Corp.'s trademarks. (ECF No. 1 ¶ 31, citing Ex. A.) Mr. Grunsfeld wrote that Lifeguard Corp. would not sue Ann Arbor T-Shirt if Ann Arbor T-Shirt complied with the following demands by specified deadlines: (1) remove all listings of infringing LIFEGUARD apparel from internet websites Ann Arbor T-Shirt controls, including its Amazon.com page; (2) permanently stop selling all LIFEGAURD apparel and destroy any remaining inventory; (3) pay Lifeguard Corp. a settlement of $20,000; and (4) notify Lifeguard Corp.'s counsel in writing that the first and second demands had been completed. (*Id.*, Ex. A.)

On September 30, 2015, counsel for Ann Arbor T-Shirt, Thomas P. Heed of The Heed Law Group, responded in writing to Mr. Grunsfeld's letter. (ECF No. 9-2.) Mr. Heed contends in his correspondence that the LIFEGUARD mark is unenforceable and cancellable. (*Id.*) Mr. Heed further indicates that Ann Arbor T-Shirt will vigorously defend against any attempt to enforce the marks. He closes by stating that Ann Arbor T-Shirt therefore will not be complying with Lifeguard Corp.'s demands, but would be amenable to reaching an amicable solution. (*Id.*)

Sometime prior to October 12, 2015, Mr. Grunsfeld and Mr. Heed spoke by telephone to assess whether the parties could resolve their dispute without litigation. (*See* ECF No. 18-1 ¶ 3.) During that conversation, Mr. Heed believed he offered for Ann Arbor T-Shirt to sub-license the LIFEGUARD marks from Defendants. (ECF No. 16 ¶ 4.) Mr. Grunsfeld, however, understood Mr. Heed to

7

be offering for Ann Arbor T-Shirt to purchase LIFEGUARD product from Popularity.  (ECF No. 18-1 ¶ 4.)  This misunderstanding was revealed during a subsequent telephone call on October 12, 2015 between Mr. Grunsfeld, Mr. Heed, and Benjamin Tebele, one of Popularity's principals.  (*Id*.)  According to Defendants, Mr. Tebele advised Mr. Heed during this call that a sub-license was not an option and that the only option was for Ann Arbor T-Shirt to purchase licensed LIFEGUARD apparel from Popularity.  (*Id*. ¶ 5.)  Mr. Heed then requested that Popularity send him a catalogue and term sheet to forward to his client.  (*Id*.)  Ann Arbor T-Shirt received Popularity's product catalogue, including pricing, on October 15, 2015.  (ECF No. 16 ¶ 4.)

There were no further communications between the parties until Ann Arbor T-Shirt served Defendants with this lawsuit, which it filed on October 16, 2015.  (ECF No. 18-1 ¶ 6.)  On October 27, 2015, Lifeguard Corp. and Popularity filed a separate lawsuit in the District Court for the Southern District of New York against Ann Arbor T-Shirt and its owners, Mr. Kozak and Mr. Winowiecki, alleging violations of the Lanham Act.  (ECF. No. 16-4.)  As indicated earlier, Lifeguard Corp. and Popularity filed the pending motion to dismiss on November 25, 2015.

## IV.   Personal Jurisdiction - Lifeguard Corp.

When a federal court's jurisdiction is premised on a federal question, as is the case here, "personal jurisdiction over a defendant exists 'if the defendant is

amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process.' " *Bird*, 289 F.3d at 871 (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) (brackets omitted). "Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one. *Mich. Coalition of Radioactive Material Users*, 954 F.2d at 1176 (citing *Chandler v. Barclays Bank PLC*, 898 F.2d 1148, 1150-51 (6th Cir. 1990)).

"Due process requires that a defendant have 'minimum contacts . . . with the forum State . . . such that he should reasonably anticipate being haled into court there.' " *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). This requirement ensures that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *Schneider*, 669 F.3d at 701. "Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general." *Air Products & Controls*, 503 F.3d at 549-50 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994)).

General jurisdiction requires the defendant to have "continuous, substantial, and systematic" contacts with the forum State. *Daimler AG v. Bauman*, -- U.S. --,

9

134 S. Ct. 746, 769 (2014).  As the Supreme Court has articulated, the defendant's "affiliations with the State [must be] so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. --, 131 S. Ct. 2846, 2851 (2011).  Ann Arbor T-Shirt contends that Lifeguard Corp.'s statements in complaints filed in other lawsuits establish that it has sufficient contacts with Michigan to subject it to general jurisdiction.  Specifically, in those pleadings, Lifeguard Corp. alleges that it sells, advertises, licenses, and promotes clothing and accessories bearing the LIFEGUARD trademarks.  *See, e.g.,* Compl., *Lifeguard Licensing Corp. v. Cauley*, No. 1:15-cv-08461 (S.D.N.Y. filed Oct. 27, 2015), ECF No. 1 ¶ 14.  Noting that Lifeguard Corp. fails to mention any geographic area in those statements, Ann Arbor T-Shirt urges the Court to find that the activity is conducted in Michigan.

As an initial matter, Lifeguard Corp.'s statements do not establish that it conducts *any* activities in Michigan, specifically.  Moreover, even if some of these activities were conducted in Michigan, the statements do not establish-- and Ann Arbor T-Shirt offers nothing to show-- that Lifeguard Corp.'s contacts with the forum are "continuous, substantial, and systematic."  *See Goodyear*, 131 S. Ct. at 2856 (rejecting "sprawling view" of general jurisdiction urged by the plaintiff in which "any substantial manufacturer or seller of goods would be amenable to suit, on any claim for relief, wherever its products are distributed."); *Johnston v.*

*Multidata Sys. Int'l Corp.*, 523 F.3d 602, 611-614 (5th Cir. 2008) (illustrating "just how difficult it is to establish general jurisdiction" and holding that general jurisdiction was lacking over the defendants, including a defendant that maintained no business in the forum, despite the fact that over a five year period it sold $140,000 worth of goods and service-related contracts to customers in the forum, representing 3% of its business, its employees periodically traveled to the forum, and its advertisements in national publications reached the forum).

    Finally, the statements on which Ann Arbor T-Shirt relies, when read along with the other factual assertions made by Lifeguard Corp in those complaints, do not contradict Lifeguard Corp.'s claims that *it* has no contact of any type with Michigan and does not *directly* sell LIFEGUARD apparel, but relies on its licensees, such as Popularity, to do so. (ECF No. 10 ¶¶ 4, 9.) Contacts in the forum resulting from the "unilateral activity" of another party or person are insufficient to support the exercise of general personal jurisdiction over a defendant.[1] *Burger King Corp. v. Rudzewicz*, 471 US. 462, 475 (1985) ("The purposeful availment requirement ensures that a defendant will not be haled into a

---

[1] For the same reason, the Court also rejects Ann Arbor T-Shirt's additional basis for asserting general jurisdiction over Lifeguard Corp.-- that is, that Lifeguard Corp. "is amenable to personal jurisdiction in any jurisdiction in which its licensee is selling goods that were specified by Lifeguard Licensing and constitute an improper, functional use of a federal trademark." (*See* ECF No. 14 at Pg ID 76-77.)

jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.").

" '[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.' " *Indah*, 661 F.3d at 920 (quoting *Goodyear*, 131 S. Ct. at 2851). In other words, "[w]hen the cause of action at issue 'arises out of or relates to' [the defendant's] contacts [with the forum], a court may properly assert personal jurisdiction, even if those contacts are 'isolated and sporadic.' " *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F3d 1355, 1359 (Fed. Cir. 1998) (quoting *Burger King*, 471 U.S. at 472-73). The Sixth Circuit has identified three requirements which must be satisfied to exercise specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (quoting *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

To support the exercise of specific jurisdiction over Lifeguard Corp., Ann Arbor T-Shirt relies on the cease and desist or "demand" letter sent by Lifeguard

Corp.'s counsel, Mr. Grunsfeld, on September 25, 2015. Ann Arbor T-Shirt argues the letter foreseeably caused it to cease making and selling its Lifeguard apparel, which it claims it had a right to do. Even if the Court were to assume that this activity satisfied the first and second criteria of the *Mohasco Industries*' test, courts have uniformly held that such letters, alone, are insufficient "to make the exercise of jurisdiction over the defendant reasonable." *See, e.g., Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) (letter outlining possible claims against the defendant found insufficient to establish purposeful availment); *Campbell Pet Co. v. Miale*, 542 F.3d 879, 885 (Fed. Cir. 2008) ("As the district court correctly noted, we have fashioned a rule, as part of the 'reasonable and fair' portion of the due process inquiry in personal jurisdiction cases, that, without more, a patentee's act of sending letters to another state claiming infringement and threatening litigation is not sufficient to confer personal jurisdiction in that state."); *Red Wing Shoe*, 148 F.3d at 1360-62 (same); *Indus Trade & Tech., LLC v. Stone Mart Corp.*, No. 2:11-cv-637, 2011 WL 6256937, at 4* (S.D. Ohio Dec. 14, 2011) (unpublished opinion) (citing cases supporting the conclusion that the defendant's cease and desist letters to the plaintiff concerning the plaintiff's use of the defendant's trademark were insufficient to confer specific personal jurisdiction).

In *Red Wing Shoe*, the Federal Circuit explained why it was unreasonable to base specific jurisdiction on a property owner's activities demanding recourse from an infringer:

> [E]ven though cease-and-desist letters alone are often substantially related to the cause of action (thus providing minimum contacts), the "minimum requirements inherent in the concept of 'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction." [*Burger King*, 471 U.S. at 477-78]. Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.

148 F.3d at 1360-61 (additional citation omitted); *see also Starline Optical Corp. v. Caldwell*, 598 F. Supp. 1023, 1027 (D.N.J. 1984) ("were the dispatch of notice-of-infringement letters to operate as a waiver of objection to *in personam* jurisdiction, the result would be a chilling effect on assertion of legal rights by holders of copyrights, patents, and trademarks."). The Federal Circuit further held in *Red Wing Shoe* that "an offer for a license within a cease-and-desist letter does not somehow convert that letter into something more than it was already." 138 F.3d at 1361. The court reasoned that "[a]n offer to license is more closely akin to an offer for settlement of a disputed claim rather than an arms-length negotiation in anticipation of a long-term continuing business relationship." *Id*. As the court additionally reasoned, "[t]reating such hybrid cease-and-desist letters differently

14

would also be contrary to fair play and substantial justice by providing disincentives for the initiating of settlement negotiations." *Id.*

For these reasons, the Court concludes that Lifeguard Corp.'s contacts with Michigan to instruct Ann Arbor T-Shirt to cease using the LIFEGUARD marks and/or to threaten litigation if Ann Arbor T-Shirt continued using those marks are insufficient, on their own, to establish personal jurisdiction over Lifeguard Corp. In other words, the Court holds that the exercise of personal jurisdiction over Lifeguard Corp. "would not comport with principles of fairness."

Therefore, the Court is granting Lifeguard Corp.'s motion to dismiss based on a lack of personal jurisdiction.

## V.     Failure to State a Claim - Popularity Products

In the first claim of its Complaint, Ann Arbor T-Shirt asks the Court to cancel the LIFEGUARD marks pursuant to the Lanham Act, 15 U.S.C. § 1119. Section 1119 provides in relevant part:

> In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations *of any party to the action*. . . .

15 U.S.C. § 1119 (emphasis added). Those courts addressing the issue of whether anyone but the owner of a trademark is a proper defendant in an action to cancel a trademark have held uniformly that the statute requires the action to proceed only

against the current owner of the mark. *See, e.g., Van Well Nursery, Inc. v. Mony Life Ins. Co.*, 421 F. Supp. 2d 1321, 1332 (E.D. Wash. 2006) ("[Section 1119 of the Lanham Act] suggests that a complaint for trademark cancellation should proceed against the party who currently owns the trademark"); *Iowa Health Sys. v. Trinity Health Corp.*, 177 F. Supp. 2d 897, 911 (N.D. Iowa 2001) (finding that "the owner of the ... mark [is] thus the only proper [defendant on] a claim for cancellation of the mark"); *Informix Software, Inc. v. Oracle Corp.*, 927 F. Supp. 1283, 1286 (N.D. Cal. 1996) ("Thus, the Court finds that an exclusive licensee of a trademark is not a proper defendant in a suit for cancellation of that trademark. Indeed, the owner of the trademark is the only proper defendant."); *Int'l Watchman, Inc. v. The NATO Strap Co.*, No. 1:13-cv-1986, 2014 WL 1333351, at *2 (N.D. Ohio Mar. 28, 2014) (unpublished opinion) (relying on *Iowa Health Systems* and *Informix Software* to conclude that the counterclaimants claims for cancellation of trademarks must be dismissed against the owner of the entity that owns the marks).

In some instances, courts have found an exclusive licensee's interest in a mark sufficient to confer standing upon it to *bring* a trademark infringement action. *See Bliss Clearing Niagra, Inc. v. Midwest Brake Bond Co.*, 339 F. Supp. 2d 944, 959 (W.D. Mich. 2004) (citing cases). Nevertheless, standing to assert an action to *enforce* a mark is not equivalent to being the proper defendant in an action to

16

cancel a mark. *See Informix Software*, 927 F. Supp. at 1286 (acknowledging "hornbook trademark law that an exclusive licensee stands in the shoes of the trademark owner, and can sue for infringement on behalf of the owner[,]" but rejecting the obverse as true: that the licensee can defend the trademark's registration). As the District Court for the Northern District of California analogized in *Informix Software*: "A tenant can sue an intruder for trespass even though he does not own the house he rents, but an action to quiet title to the house would have to proceed directly against the property owner." *Id*. Moreover, the view that an exclusive licensee can sue for infringement represents a minority view. 6 McCarthy on Trademarks and Unfair Competition § 32:3 (4th ed.). The majority view is that the only party with "standing to seek the special evidentiary advantages and remedies accorded a federally registered trademark" is the federal registrant (which embraces the legal representatives, predecessors, successors, and assigns of such registrant). *Id*. In any event, even if an "exclusive licensee" has standing to bring a trademark infringement action *and* can defend an action seeking to cancel the registration, Popularity is not an "exclusive licensee" (*see, e.g.*, ECF No. 18, Ex. 4 at 1) and the considerations for analyzing when a licensee's rights are sufficient to confer standing weigh against finding that it is a proper party to Ann Arbor T-Shirt's claim. *See Bliss Clearing Niagra*, 339 F.

17

Supp. 2d at 959-60.  Lifeguard Corp. retains all rights in the marks and has granted Popularity limited rights in the marks.  (*See* ECF No. 18, Ex. 6.)

For these reasons, the Court concludes that Popularity is not a proper defendant with respect to Count I of Ann Arbor T-Shirt's Complaint.

In Counts II and III of the Complaint, Ann Arbor T-Shirt asks the Court to declare that its use of "Lifeguard" is descriptive or fair (Count II) or functional (Count III) and therefore not infringing of Lifeguard Corp.'s trademarks.  These are defenses to infringement pursuant to the Lanham Act, 15 U.S.C. § 1115(b)(4), (8).  If Popularity lacks standing to bring an infringement action to enforce the LIFEGUARD marks and is not a proper party to Ann Arbor T-Shirt's claim to cancel those marks, it appears obvious that it is not a proper defendant in a prophylactic declaratory judgment action seeking a ruling on the defenses it would raise in an infringement action.  The Court therefore also finds that Counts II and III fail to state a claim against Popularity on which relief may be granted.

## VI.  Conclusion

In summary, the Court holds that it lacks personal jurisdiction over Lifeguard Corp.  As such, the Court is dismissing without prejudice Ann Arbor T-Shirt's claims against it.  The Court concludes that Ann Arbor T-Shirt fails to state a claim upon which relief may be granted against Popularity in Counts I, II, and III

18

of the Complaint. Therefore, the Court is dismissing with prejudice Ann Arbor T-Shirt's claims against this defendant.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss is **GRANTED**.

                                                         s/ Linda V. Parker
                                                         LINDA V. PARKER
                                                         U.S. DISTRICT JUDGE

Dated: April 5, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, April 5, 2016, by electronic and/or U.S. First Class mail.

                                                         s/ Richard Loury
                                                         Case Manager